**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**

| | | | |
|---|---|---|---|
| UNITED STATES OF AMERICA | : | | |
| vs. | : | Case | 8:19-cr-00587-PX |
| MUHAMMED LUQMAN RANA | : | | |
| Defendant | : | | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

**I.     INTRODUCTION**

On December 16, 2022, Muhammed Rana appeared before this Honorable Court and entered a guilty plea to Counts 1 and 2 of the indictment charging him with Production of Child Pornography in violation of 18 U.S.C. § 2251(a), and Extortion by Threat to Injure the Reputation of Another, in violation of 18 U.S.C. § 875(d), pursuant to a plea agreement. Following Mr. Rana's guilty plea, the Court Ordered a Presentence Report which has been submitted to the Court, Mr. Rana, and the Government.

In this Memorandum, Mr. Rana submits that a sentence within the applicable US Sentencing Guidelines Range is greater than necessary to achieve the sentencing purposes set forth in 18 U.S.C. § 3553(a). Specifically, Mr. Rana will argue:

1. The Court should impose a variant sentence in consideration of the nature and circumstances and the history and characteristics of the Defendant;

2. The Court should impose a variant sentence because Mr. Rana served 217 days in custody in Canada while awaiting extradition to the United States and the Bureau of Prisons may not grant him credit for time served;

1

3. The Court should impose a variant sentence because the duration and conditions of Mr. Rana's confinement will be more punitive because he is a removable alien; and

4. The Court should impose a variant sentence to allow the Defendant to return to his home country rather than warehouse him in the Bureau of Prisons for an excessively lengthy period of time.

II. **NATURE AND CIRCUMSTANCES; HISTORY AND CHARACTERISTICS OF DEFENDANT**

Mr. Rana has accepted full responsibility for his conduct as accurately set forth in the Stipulation of Facts appended to the Plea Agreement and 10-18 of the Presentence Investigation Report. When Mr. Rana was first confronted by the Royal Canadian Mounted Police regarding his actions in March of 2017, he gave a full statement admitting his involvement. Consistent therewith, after being held in Canada and then extradited to the United States, Mr. Rana promptly entered a guilty plea in this matter.

Mr. Rana was a lonely and somewhat isolated child and had very little social interaction spending most of his time in front of a television or computer. The majority of his social interactions and relationships with those outside of his family were experienced on-line through MSN Messenger in his younger days. These interactions were exciting for him, he spent increasingly more time online and socializing online quickly became his primary source of social contact. He did not participate in sports, hobbies, or other endeavors outside of school. He spent most if not all of his free time in his bedroom, on his computer, seeking social connection in the virtual online world.

As Mr. Rana got older, he began reaching out to women and girls in the pattern of behavior that forms the basis for his convictions herein. The behaviors became habits

2

and compulsions to connect, converse with, and engage in sexual interactions with girls online. He felt mounting shame as he indulged in these addictive behaviors. The age of the women or girl on the other end of the conversation did not matter to him. His addictive behavior was indiscriminate. The internet and anonymous websites like *Omegle* provided ample opportunities to interact with women and girls who were also lonely and/or prone to risky on-line behaviors and therefore vulnerable to Mr. Rana's attempts at sexual interaction and control.

    Mr. Rana managed to hide his activities from his parents and siblings, with whom he resided at the time and respected. He reports feeling a sense of relief when he was confronted by the Royal Canadian Mounted Police in 2017 and given a chance to confess his crimes to a Detective. There is no evidence nor indication that he has continued his behavior after the first law enforcement contact in 2017.

    In all other respects, Mr. Rana has led a law-abiding, studious and charitable life. He graduated in 2007 from Maple High School, Maple, Ontario. He attended and worked at Ahmadiyya Muslim Jamaat Canada from 2018-January, 2021. He was married, generously charitable making cash donations to many causes within his jamaat in excess of $20,000 over 5 years between 2017 and 2021 and he was a blood donor.

    Mr. Rana has been in various forms of detention related to this matter since 2017 when he was first linked to the KingCheetah email account. He was arrested in Canada on January 14, 2021, was held in confinement and then released to home confinement on February 16, 2021 in the custody of his Father and later his wife. He was rearrested again in July 23, 2021 pursuant to the extradition request which eventually brought him

before this Honorable Court. He was extradited on January 25, 2022 and made his initial appearance the next day. He has been in custody since that time.[1]

While incarcerated in Canada, Mr. Rana availed himself of a series of programs of various lengths and subjects offered to inmates. Attached collectively as Exhibit 1 are certificates documenting the completion of these programs including:

1) Communication Skills Workshop
2) Money Management Workshop
3) Anger Management Workshop
4) Life Skills Workshop
5) Stress Management Workshop
6) Goal Setting Workshop
7) Anti-Criminal Thinking Workshop
8) Cognitive Skills Workshop

Defendant has been confined in Lehigh County Jail near Allentown, Pennsylvania since he arrived in the United States. As such, he has not been able to meet frequently in person with his Counsel (although multiple virtual and telephonic meetings have been completed), he has not had any visitors and, as a federal prisoner, he has not been permitted to participate in live programs offered at the jail. *See* Exhibit 2- Lehigh Department of Corrections-Inmates Request to Staff. Mr. Rana has availed himself of the opportunity to participate in all available on-line programming through **edovo** completing 39 different courses totaling 159.07 hours in education.[2] *See* Exhibit 3 -**edovo** transcript.

Mr. Rana has also spent his time reading numerous books and novels and

---

[1] The Defendant is obligated to recommend a sentence of not less than 42months in his plea agreement.
[2] The Defendant is obligated to recommend a sentence of not less than 42months in his plea agreement.

4

writing book reports on what he has learned from his readings. He has asked counsel to share the list of books and two book reports he prepared. <u>See</u> Exhibit 4 -Rana book list and book reports (handwritten). It is Mr. Rana's sincere goal to emerge from his term of imprisonment as a more mature, learned and empathetic person who fully understands how his behavior has hurt his victims.

    Mr. Rana's parents are simply too old and infirm to travel to the United States to visit with him or attend court. His parents and brother have submitted letters to the Court. <u>See</u> Exhibit 5-Letters from family. Mr. Rana's wife has since decided to divorce him due to the lengthy minimum sentence she knew he will receive and her need to move on with her life. While he has been incarcerated, Mr. Rana unfortunately lost his grandmother, with whom he had resided for parts of his life and was therefore very close. His parents have endured a series of serious illnesses and he has unintentionally lost 40 pounds since arriving in the United States.

    Finally, it is important to note that there is no evidence that Mr. Rana ever transferred any of the video content he received from the victims of his behavior and **never** carried out any of the extortive threats that are at the heart of his crime.

### III.    <u>ARGUMENT</u>

    After consideration of the Plea Agreement, sentencing guidelines range, the four purposes of sentencing and the six factors contained in 18 U.S.C. § 3553(a), it is respectfully suggested that the Court should sentence Mr. Rana to a variant sentence, which is sufficient but not greater than necessary to achieve the sentencing purposes of 18 U.S.C. § 3553.

**A. THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND HISTORY AND CHARACTERISTICS OF MR. RANA SUGGEST THAT GUIDELINE SENTENCE OF IMPRISONMENT WOULD BE GREATER THAN NECESSARY TO COMPLY WITH THE SENTENCING PURPOSES AND FACTORS SET FORTH IN 18 U.S.C. §3553(A)**

Mr. Rana has no criminal history, placing him in Criminal History category I. The defense does not dispute the accuracy of the USSG range calculated by the Pre-Sentence Report writer. After deducting three levels for Mr. Rana's prompt acceptance of responsibility, the PSR writer tabulates Mr. Rana's Total Offense Level to be 42, making his USSG range in this case 360 to 384 months. The minimum term of imprisonment for Count 1 is 15 years, and the maximum term is 30 years/360 months. 18 U.S.C. § 2251(a) and (e). For Count 2, the maximum term of imprisonment is two years. 18 U.S.C. § 875(d).

The conduct to which Mr. Rana has pleaded guilty, as described ¶ 10-18 of the PSR is admittedly deserving of significant punishment. Mr. Rana fully acknowledges that he has caused serious harm to his victims. However, without disregarding or discounting in any way that harm, counsel respectfully suggests that the applicable USSG range overrepresents the nature of his culpability and would be an excessively harsh sentence. Mr. Rana is facing a guidelines' range that is reserved for the very most severe cases of criminal culpability and harm that come before this Court. The Total Offense level applicable to Mr. Rana's conduct is 42, after his prompt acceptance of responsibility. If the Court were sentencing Mr. Rana after a trial in this matter, the

6

guidelines' range would have fallen off the bottom of the chart, resulting in a range of Life to Life.

By way of comparison, a defendant who committed premeditated First-Degree Murder would likely have a Total Offense level of 43, reduced to a 40 if they promptly accepted responsibility. *See* USSG § 2A1.1. For Second Degree Murder, the level would be 35 after a guilty plea, resulting in a guidelines' range of 168-210 months for a defendant with no criminal history, like Mr. Rana. *See* USSG § 2A1.2. Had a defendant used a computer to contact a child and then physically committed an Aggravated Sexual Abuse of a Child Under 16, their total offense level after a guilty plea would be 37 for a range of 210-262 months. *See* 18 U.S.C. § 2241(c) and USSG § 2A3.1.

Fortunately, there is no evidence nor claim that Mr. Rana ever had physical contact with any of the victims. All of his crimes were committed on-line. There is also no evidence that he ever followed through on his extortive threats or otherwise disseminated any of the child pornography he obtained. In this case, where the defendant did not have any physical contact with the victims, the guidelines range overrepresents his criminal conduct.

### B. THE COURT SHOULD IMPOSE A VARIANT SENTENCE BECAUSE MR. RANA SERVED 217 DAYS IN CUSTODY IN CANADA

As the PSR reflects, Mr. Rana was arrested in Canada on January 14, 2021, pending extradition to the United States for the instant offense. He was detained in Canada until February 16, 2021, when he was released on extradition bail. He was then taken back into custody in Canada from July 23, 2021, until January 25, 2022, at which time he was extradited to the United States. Mr. Rana served a total 217 days in

Canadian custody while awaiting extradition.

The Court should vary downward in its sentence to reflect the time that Mr. Rana spent in custody of a foreign nation on the instant offense. Mr. Rana served this time in a jail, under conditions similar to his pre-trial confinement in the United States. He should be granted credit against his current sentence for the 217 days he served.

### C. THE COURT SHOULD IMPOSE A VARIANT SENTENCE BECAUSE THE CONDITIONS AND DURATION OF CONFINEMENT IN THE BUREAU OF PRISONS WILL BE MORE PUNITIVE FOR MR. RANA AS A REMOVABLE ALIEN

Mr. Rana is a citizen of Canada and was brought to the United States to face prosecution in this matter. Counsel understands that an immigration detainer is in place and that as soon as Mr. Rana is "released" from his confinement in this case, he will be moved to immigration custody for deportation. He can expect to serve several months in immigration custody while his deportation is processed.

As a result of his immigration status, Mr. Rana will serve a sentence that is increased in both length and severity of conditions of confinement, when compared to a similarly situated U.S. citizen defendant.[3] Mr. Rana's status as a deportable alien is relevant [to the sentencing Court] as it may lead to conditions of confinement, or other incidents of punishment, that are substantially more onerous than the framers of the guidelines contemplated in fixing the punishment range for the defendant's offense. United States v. Guzman, 236 F.3d 830, 834 (7th Cir. 2001). This dichotomy has in fact been the basis for "departures" in other circuits such

---

3  The Defendant is obligated to recommend a sentence of not less than 42months in his plea agreement.

as the D.C. Circuit. See, e.g., U.S. v. Smith, 27 F. 3d 649, 655 (1994)("a downward departure may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence…"); see also United States v. Farouil, 124 F.3d 838, 847 (7th Cir. 1997), United States v. Lopez-Salas, 266 F.3d 842, 847 (8th Cir. Neb. 2001), and United States v. Charry Cubillos, 91 F.3d 1342, 1344 (9th Cir. 1996). The Fourth Circuit has also "implicitly concluded that district courts have the discretion to impose below-guidelines sentences for this reason." United States v. Salguero-Ortiz, 2012 U.S. App. LEXIS 12875, 483 Fed. Appx. 858, 864 (4th Cir. 2012) (citing United States v. Hyppolite,65F.3d1151,1159(4thCir.1995)).

    The Court should consider that Mr. Rana will serve a more punitive sentence based on status as a deportable alien and grant a downward variance. Based on his status as a deportable alien, the length of confinement will be increased because Mr. Rana, unlike other federal prisoners, will not be eligible for early release or placement in a halfway house up to six (6) months prior to his release date, pursuant to 18 U.S.C. § 3624(c), and therefore will have to serve more time in confinement than other federal prisoners under the exact same sentence.

    The severity of his sentence will also be increased because he will not be eligible for the same benefits or programs within the Federal Bureau of Prisons as other prisoners. He will be subjected to more severe inmate classification, as removable inmates are not eligible for placement into prison camps and instead are subjected to placement in higher security facilities. See U.S. Dept. of Justice Federal Bureau of

9

Prisons Program Statement 5100.08, "Inmate Security Designation and Custody Classification," 9/12/06, at p. 50 (An inmate who is not a citizen of the United States shall be housed in at least a low security level institution, making the inmate ineligible for placement in a minimum security level institution). It is unclear whether Mr. Rana will be eligible to participate in the Bureau of Prisons Sex Offender Management Programs due to his status. He certainly intends to request the necessary initial evaluations and intends to actively participate if afforded the opportunity. *See* Bureau of Prisons Program Statement Number 5324.10 bop.gov/policy/progstat/5324_010.pdf and https://www.bop.gov/inmates/custody_and_care/sex_offenders.jsp.

As a removable inmate, Mr. Rana will also not be eligible to participate in the Federal Prison Industries work program, 28 CFR § 345.35; or early release through successful completion of the Residential Drug Treatment program, 28 CFR § 550.55(b)(1). Based on the increased severity and length of Mr. Rana's incarceration, the Court should sentence the him below the otherwise applicable guidelines range.

### D. **THE COURT SHOULD IMPOSE A VARIANT SENTENCE TO ALLOW THE DEFENDANT TO RETURN TO CANADA RATHER THAN WAREHOUSE HIM IN THE BUREAU OF PRISONS FOR AN EXCESSIVELY LONG PERIOD OF TIME.**

While Mr. Rana hopes to return to Canada on an International Prisoner Transfer, while he is in the United States, the extensive cost of his incarceration will be borne on United States taxpayers. Mr. Rana has never lived in the United States and due to his instant conviction, it is highly unlikely that he will ever have the opportunity to return to the United States after his incarceration. It is respectfully suggested that the expense of an excessively lengthy period of incarceration here in the United States for a

10

transferable and deportable alien like Mr. Rana is uneconomical. According to the Bureau of Prisons, in 2020, it costs an average of $39,158 per year ($120.59 per day) to incarcerate a prisoner in a federal facility. "Annual Determination of Average Cost of Incarceration Fee (COIF)," Bureau of Prisons, published in the Federal Registrar 8-31-21.

Mr. Rana will receive a minimum of 15 years in a federal facility, at a current cost of $587,370. It is an undesirable use of resources to expend additional hundreds of thousands of dollars to incarcerate a removable alien who will never reside in the community here.

## IV.    RESTITUTION

The Government has forwarded restitution request from victim 2 and victim 5. Victim 2 has submitted proof of her restitution request in the amount totaling $2,624.80. Victim 5 has requested restitution in the total amount of $18,750.

After reviewing these two victim impact statements and evidence pertaining to their restitution claims, Mr. Rana has agreed to these amounts of restitution. He has not been made aware of any other restitution claims.

Furthermore, Mr. Rana asked his parents to liquidate any assets they possess of his and they have provided funds to undersigned counsel, which are currently held in the Law Firms Attorney IOLTA account, to pay these restitution amounts to the Clerk of the Court. Counsel intends to proceed as instructed upon receipt of the final judgment in this matter fully satisfying the victims restitution requests.

It is Mr. Rana's sincere wish that the restoration of these losses will at least even

if only in a small way, demonstrate to these two women that he regrets his past behavior and fully recognizes the harm he caused them.

## V. CONCLUSION

After consideration of the sentencing guidelines range as well as the six factors contained in 18 U.S.C. § 3553(a), a variant sentence below the guidelines range would be sufficient and not greater than necessary to serve the sentencing goals and purposes set forth in the statute in this case.

Respectfully submitted,

*Richard A. Finci*  /s/
Richard A. Finci, Esquire
Houlon, Berman, Finci & Levenstein, LLC
7850 Walker Drive, Suite 160
Greenbelt, Maryland 20770
finci@houlonberman.com
Telephone: (301) 459-8200
Facsimile: (301) 459-5721

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 24th day of April, 2023, a copy of the Sentencing Memorandum was served via the electronic system to the Gary M. Morgan, Jr., Esq. and Jennifer Leonardo, Esquire, Office of the United States Attorney, 6406 Ivy Lane, Greenbelt, Maryland 20770.

*Richard A. Finci*  /s/
Richard A. Finci, Esquire